AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: Drew Davis 2/20/2026

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

FEB 20 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY MW, DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

In the matter of the search of information associated with the cellular device assigned call number (580) 548-3253 that is stored at premises controlled by AT&T Corporation

Case No. M-26-98-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Southern District of Florida, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See affidavit of DEA TFO Cecil Nave.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

CECIL NAVE, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 20, 2026

*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (580) 548-3253, THAT IS STORED AT PREMISES CONTROLLED BY AT&T CORPORATION** | **Case No.** ________________ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Cecil Nave, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(580) 548-3253**, ("the **SUBJECT PHONE**"), that is stored at premises controlled by AT&T Corporation ("AT&T"), a wireless telephone service provider located at 11760 U.S. Highway 1 North Palm Beach, Florida 33408. The information to be searched is described in the following paragraphs and in **Attachment A**. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in **Section I of Attachment B**. Upon receipt of the information described in **Section I of**

**Attachment B**, government-authorized persons will review the information to locate items described in **Section II of Attachment B**.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since January 2025. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in, *inter alia*, the Controlled Substances Act, Title 21, United States Code. I am currently assigned to the Oklahoma City Division of the DEA as a TFO from my parent agency of the Oklahoma City Police Department. Within the Oklahoma City Police Department, I am a Detective assigned to the Major Violators Unit, whose mission is to investigate and assist in the prosecution of high-level narcotics trafficking organizations.

3. Since becoming a TFO, I have conducted multiple investigations targeting drug trafficking organizations, some of which involved the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have experience in the methods used in drug trafficking investigations, including but not limited to, debriefing cooperating witnesses and cooperating sources, the preparation and execution of search warrants, and making arrests. In light of this experience, I know the following:

a. I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, including computers,

tablets, cell phones, and other electronic storage devices, to communicate and coordinate drug transactions and execute electronic transactions which can, in turn, create automatic records and documentation of the drug transactions;

b. I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c. I am aware that individuals engaged in the sale and distribution of illegal drugs will frequently keep contact information and other evidence of their financial and drug dealings with DTOs on cellular phones, computers, tablets, and other storage devices that they often keep on or near their person;

d. I am also aware that individuals engaged in the sale and distribution of illegal drugs will often use cellular phones to further their financial businesses using digital communication, including, but not limited to, e-mail and instant messaging; and

e. I am aware that individuals involved in transporting illegal drugs will often use electronic devices to communicate with the individuals for whom they are transporting the drugs, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5. Based on the facts set forth in this Affidavit, there is probable cause to believe that **Emely Enriquez Barreras** and **Jhon Guerrero Hernandez**, possessed with intent to distribute more than 50 grams of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1), and that evidence of the receipt and transportation of this methamphetamine is stored at AT&T. Accordingly, there is probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband, or fruits of this crime as further described in **Attachment B**.

## PROBABLE CAUSE

6. On August 14, 2025, Oklahoma County Sherrif's Office (OCSO) deputies, working with the Criminal Interdiction Team of Central Oklahoma (CITCO), observed a black Nissan Altima (Arizona tag CSK4646), and a silver Toyota Camry (Arizona tag T2A8HL) travelling eastbound through the construction zone near Choctaw, Oklahoma, within the Western District of Oklahoma.

7. At one point, deputies observed the Nissan Altima following the Toyota Camry at an unsafe distance, within one car length. The deputies then observed both cars crossing the fog line while exiting the off ramp for South Choctaw Road. OCSO Deputy Pettus subsequently pulled behind the Nissan Altima and activated his lights to initiate a traffic stop on the Nissan Altima near Interstate-40 and South Choctaw Road.

8. While at the stoplight at Choctaw road located at the end of the interstate offramp, deputies observed the driver of the Altima appear to communicate with the occupants of the Camry. Once the traffic light turned green, the Altima appeared to wait for the Camry to advance through the intersection and leave the scene heading northbound before slowly turning southbound, and eventually stopping at the E-Express Truck Stop located at 7501 S. Choctaw Road.

9. After smelling an odor of marijuana coming from the Nissan Altima, the deputies performed a probable cause search of the car. Inside the vehicle, deputies located a loaded pistol under the front passenger seat, several white pills, and a backpack containing blunt rolling papers, a digital scale, and a bag containing a substance that appeared, to the officers, to be consistent with methamphetamine or cocaine. Inside the trunk of the vehicle, deputies located two spare tires with differing lug patterns and tools.

10. Both occupants of the Altima denied traveling with the Camry, however, both license plate tags of the Altima and Camry were run through a license plate reader (LPR) system, and the deputies were able to confirm that both vehicles had traveled in tandem along Interstate 40 from Albuquerque, New Mexico, through the Texas Panhandle, and through Oklahoma.

11. Based on their training and experience, the deputies surmised that that the Nissan Altima may have been a decoy vehicle, and that the Toyota Camry may be loaded with narcotics housed in its spare tire compartment.

12. The deputies performed a criminal history check and then allowed the occupants of the Nissan Altima to leave the scene with their possessions.

13. Later, in the evening of August 14, 2025, officers located the Toyota Camry at the Best Western Plus Hotel at 2651 Market Blvd, Choctaw, Oklahoma, within the Western District of Oklahoma. There, Deputy William Marchant observed a male and female exit the Camry and enter the hotel lobby. Once the deputy confirmed the license plate tag, he detained both occupants. The male was identified as **Jhon Manuel Guerrero Hernandez**; the female was identified as **Emely Enriquez Barrera**. Phones were seized from both **Hernandez** and **Barrera**.

14. A drug canine was called to the scene and conducted an open-air sniff of the Camry. The dog positively alerted to the presence of narcotics, and a probable cause search of the vehicle then took place. Inside the trunk of the Camry, officers located approximately 65 kilograms of pure methamphetamine. **Hernandez** and **Barrera** were then placed under arrest.

15. **Barrera** provided her cellphone number to law enforcement as **(580) 548-3253**.

16. Utilizing law enforcement databases, I was able to confirm that phone number **(580) 548-3253** (**SUBJECT PHONE**) is serviced by AT&T.

17. Subsequent investigation has revealed that the Toyota Camry, bearing Arizona tag T2A8HL, crossed from Mexico into California on August 3, 2025, less than two weeks before it was found in Choctaw, Oklahoma, loaded with a large quantity of methamphetamine.

18. Additionally, the same Toyota Camry appears to have crossed from Mexico into the United States on July 26, 2025, and June 28, 2025.

19. Based on my training and experience, I know that methamphetamine in the United States is commonly sourced from Mexico.

20. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone services have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a

wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that AT&T can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for a wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

investigation because the information can be used to identify the **SUBJECT PHONE's** user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24. I further request that the Court direct AT&T to disclose to the government any information described in **Section I of Attachment B** that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

CECIL NAVE
Task Force Officer
Drug Enforcement
Administration

Subscribed and sworn to before me on February 20, 2026.

SUZANNE MITCHELL
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(580) 548-3253**, that is stored at premises controlled by AT&T Corporation, located at 11760 U.S. Highway 1 North Palm Beach, Florida 33408.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in **Attachment A** for the time period **June 28, 2025, through August 15, 2025**:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

iii. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT PHONE**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and

destination telephone numbers (call detail records), email addresses, and IP addresses);

2. information regarding the cell tower and antenna face (also known as "sectors") through which the communication were sent and received; and

3. RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.).

**Information to be Seized by the Government**

All information described above in **Section I** that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 846 involving **Emely Enriquez Barrera**, during the period **June 28, 2025, through August 15, 2025**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.